**UNITED STATES of America,**

v.

**Hector ACEVEDO-RAMOS, Defendant.**

**Crim. No. 84-373 HL.**

United States District Court,
D. Puerto Rico.

Dec. 21, 1984.

Luis Carbone, Luis F. Abreu Elías, Hato Rey, P.R., William M. Kunstler, Ronald L. Kuby, New York City, for defendant.

Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., for United States.

### OPINION AND ORDER

LAFFITTE, District Judge.

Defendant Héctor Acevedo-Ramos was indicted and arrested on November 15, 1984, with other five defendants. Defendant was charged on a two count indictment with conspiracy to delay and affect commerce by robbery, in violation of 18 U.S.C. § 1951, and with the substantive offense of robbery of approximately 770 diamonds from Taillex Corporation, valued at $620,-918, in violation of 18 U.S.C. § 2. The offenses carry a maximum penalty of twenty years imprisonment and/or a $10,000 fine in each count.

The Government sought, and, after a full hearing held on November 19, 21, and 26, 1984 before Magistrate Arenas obtained, defendant's preventive detention pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., effective on October 12, 1984. The detention order, filed on November 26, 1984, contains written findings of fact and the reasons for detention as mandated by Section 3142(i).[1] On November 28, another Opinion and Order, on reconsideration, was filed by the Magistrate, reaffirming his prior detention order. On December 6, defendant filed a "Notice of Appeal", which the Court entertained and set for hearing on December 12th, as a motion for revocation or amendment of a detention order. 18 U.S.C. § 3145(b).[2] Simultaneous briefs were ordered to be filed, and there-

---

1. Section 3142(i) reads:

"(i) *Contents of detention order.* In a detention order issued pursuant to the provisions of subsection (e), the judicial officer shall—
(1) include written findings of fact and written statement of the reasons for detention."

2. Section 3145(b) provides:

"*Review of a Detention Order.* If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly."

after the matter was submitted on December 14, 1984, upon defendant's supplemental brief.

Defendant claims that the detention order should be set aside and defendant released on bail, on the grounds that (1) Section 3142 of the Bail Reform Act is facially unconstitutional, and deprives defendant of due process of law, (2) pretrial detention as authorized by the Act violates the Eighth Amendment, and (3) the findings of the Magistrate that defendant is a danger to the Government witnesses and to the community, and that there is serious risk that he will obstruct or attempt to obstruct justice, are not supported by "clear and convincing evidence."

## A. THE BAIL REFORM ACT

The Bail Reform Act of 1984, Chapter II of the Comprehensive Crime Control Act of 1984, Public Law No. 98–473, was Congress' response to the flaws in the pretrial release system created by the Bail Reform Act of 1966. Congress found that there was a widespread pattern of serious crimes being committed by persons on pretrial release. See, S.Rep. No. 225, 98th Cong., 2nd Session 6 (1984); S.Rep. No. 147, 98th Cong., 1st Sess. 22–30 (1983); S.Rep. No. 317, 97th Cong., 2nd Sess. 27–35 (1982); 130 Cong.Rec. S4109, daily ed. Jan. 20, 1984 (remarks of Sen. Thurmond); id. at S537, daily ed. Jan. 31, 1984 (remarks of Sen. Mitchell); id. at S945 (daily ed. Feb. 3, 1984 (remarks of Sen. Hatch). The Act reflects congressional concern with the alarming problem of crimes committed by persons on release and with the inadequate authority of the courts to make release decisions that give appropriate recognition to the danger a person may pose to others, to the community or to the administration of justice. Senator Mitchell remarked:

In the 17 years of experience we have had with the (Bail Reform Act of 1966), it has come under criticism as too liberally permitting pretrial release and not allowing judges to give sufficient weight to any other factors involved, particularly the safety of the community.

The need to allow a judge to consider the dangerousness of a defendant to the community when bail or pretrial release is contemplated is to me obvious. And it is supported by studies. A 1981 Lazar Institute study found that approximately 1 in 6 defendants awaiting trial was rearrested during the pretrial period. And of those, more than one-third had multiple arrests.

No society can or will maintain its essential civil liberties if a majority of its citizens comes to believe that the Government cannot or will not protect them against random crime. Current bail and pretrial release practice is an area in which the public perception is that apprehension and arrest provide no assurance for public safety.

Id. at S939 (daily ed. Feb. 3, 1984.)

The applicable provisions governing these proceedings are set forth below:

Section 3142. *Release or detention of a defendant pending trial*

(a) IN GENERAL.—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

\*　　\*　　\*　　\*　　\*　　\*

(4) detained pursuant to the provisions of subsection (e).

\*　　\*　　\*　　\*　　\*　　\*

(e) DETENTION.—If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial.... Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed ... an offense under section 924(c) of title 18 of the

United States Code [possession of a firearm during the commission of a felony].

(f) DETENTION HEARING.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community in a case—

(1) upon motion of the attorney for the Government, that involves—

(A) a crime of violence;

(B) . . .

(C) . . .

(D) . . .

(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, that involves—

(A) . . .

(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days.... At the hearing, the person has the right to be represented by counsel, and, if he is financially unable to obtain adequate representation, to have counsel appointed for him. The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condi-

tion or combination or conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing.

(g) FACTORS TO BE CONSIDERED. —The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

\*      \*      \*      \*      \*      \*

(i) CONTENTS OF DETENTION ORDER.—In a detention order issued pursuant to the provisions of subsection (e), the judicial officer shall—

(1) include written findings of fact and a written statement of the reasons for the detention;

(2) direct that the person be committed to the custody of the Attorney General for the confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(3) direct that the person be afforded reasonable opportunity for private consultation with his counsel; and

(4) direct that, on order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

(j) PRESUMPTION OF INNOCENCE. —Nothing in this section shall be construed as modifying or limiting the presumption of innocence.

The pretrial detention provision of the Bail Reform Act of 1984, 18 U.S.C. § 3142, is modeled upon a pretrial detention statute enacted by Congress for the District of Columbia in 1970, 23 D.C.Code Section 1322. The statute passed constitutional muster in *United States v. Edwards*, 430 A.2d 1321 (D.C.Ct.App.1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), in the face of a wide range of constitutional attacks. The legislative history of Section 3142 shows that Congress relied heavily on *Edwards* in enacting the federal counterpart of the District of Columbia's detention statute. See, S.Rep. No. 225, 98th Cong., 1st Sess. 3–36 (1983).

### B. DEFENDANT'S DUE PROCESS CLAIM

Defendant asserts that Section 3142 is unconstitutional per se and is really a subterfuge to impose punishment in the absence of a trial. Supplemental Memorandum p. 9. Defendant also claimed in oral argument that pretrial detention is really punishment for past conduct without an adjudication of guilt.[3] In *Edwards, supra,* it was concluded that pretrial detention is regulatory, prospective and forward-looking, and not punishment. The *Edwards* court further held that pretrial detention is intended to protect the safety of the community, a legitimate legislative interest by "incapacitating the detainee to curtail reasonably predictable conduct, not to punish for prior bad acts". Id at 1332. The legislative history of the Bail Reform Act of 1984 indicates an intent to protect the community against persons likely to endanger it, and not as an intent to punish.[4] See, S.Rep. No. 225, 98th Cong., 2nd sess. 8 (1984); S.Rep. No. 147, 98th Cong., 1st Sess. 34–35 (1983).

The Supreme Court has stressed that crime prevention is a "weighty social objective", *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); and that the legitimate and compelling governmental interest in protecting the community from crime cannot be doubted. *DeVeau v. Braisted,* 363 U.S. 144, 155, 80 S.Ct. 1146, 1152, 4 L.Ed.2d 1109 (1960). For the reasons elaborated below, we hold that the pretrial detention provisions in Section 3142 of the Bail Reform Act, combined with other procedural safeguards in the Act discussed below, serves a compelling interest and a legitimate congressional objective in the battle against crime, and comports with due process of law. *Schall v. Martin,* —— U.S. ——, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).

---

**3.** Although defendant did not elaborate, the Court assumes that the claim is aimed at triggering the full procedural safeguards of a criminal trial under the Fifth and Sixth Amendments.

**4.** The time limitations of the Speedy Trial Act, 18 U.S.C. § 1361 et seq., serve to neutralize any argument that pretrial detention may be of unlimited extension.

■ The statutory provisions that rely on future conduct as a basis for pretrial detention are not speculative nor vague.[5] In *Schall, supra,* the Supreme Court stated:

Our cases indicate that from a legal point of view there is nothing inherently unattainable about a prediction of future criminal conduct. Such a judgment forms an important element in many decisions, and we have specifically rejected the contention ... "that it is impossible to predict future behavior and that the question is so vague as to be meaningless." (Citations omitted.)

We have also recognized that prediction of future criminal conduct is an "experienced prediction based on a host of variables" which cannot be codified. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 16, 99 S.Ct. 2100 [2108], 60 L.Ed.2d 668 (1979). Id. at 2417–18.

The statute contains sufficient procedural safeguards to satisfy the *Schall* standards. The procedural requirements for the pretrial detention hearing set forth in Section 3142(f) are based on those of the District of Columbia statute which were held to meet constitutional due process requirements in *Edwards, supra.* The Act provides for a prompt hearing, right to counsel and to the appointment of counsel if the person is financially unable to secure adequate representation, the right to present witnesses, the right to testify, cross-examine, and to offer information by proffer or otherwise. Section 3142(f)(2)(B). The Act further specifies the factors to be considered [Section 3142(g) ], and that the findings for a detention order shall be supported by "clear and convincing evidence" [Section 3142(f) ]. The detention order must be in writing and shall contain certain conditions [Section 3142(h)(1) ]. Finally, Section 3145(b) and (c) provides for an expedited review by a District Court and by a Court of Appeals. This built-in system of expedited appeals serves to further guarantee an accused's due process rights not to be held in deten-

tion unlawfully. These layers of expedited review, coupled with the strict time constraints of the Speedy Trial Act provides additional safeguards. In this particular case, the trial has already been scheduled for January 23, 1985.

## C. THE CLAIM THAT DETENTION WITHOUT BAIL VIOLATES THE EIGHTH AMENDMENT

■ The defendant argues that his pretrial detention without bail contravenes the Eighth Amendment's proscription against excessive bail, and that denial of bail is the most offensive example of "excessive bail." We disagree. Defendant relies on *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951). But the reference in *Stack* to the right of admission to bail is dicta. The issue there was not pretrial detention. More appropriate is *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), when the Court in upholding pretrial detention of aliens, pending deportation proceeding, stated:

"The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country." Id. at 545, 72 S.Ct. at 536–37 (footnotes omitted).

In *Edwards,* the District of Columbia Court of Appeals followed *Carlson* in rejecting the claim of a constitutional right to bail. The right to bail has been a statutory tradition, not an absolute constitutional right. The excessive bail claim of the Eighth Amendment was never intended to restrict what offenses could be deemed bailable.

**5.** Section 3142 makes references to conduct that "will endanger the safety of any other or the community", "or that there is a serious risk that the person will obstruct or attempt to obstruct justice or threaten, injure, or intimidate a prospective witness or juror."

*U.S. v. Edwards, supra,* at 1330, 1331; *Hunt v. Roth,* 648 F.2d 1148 (8th Cir.1981), vacated as moot sub nom *Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).[6] Indeed, the overwhelming weight of authority indicates that the Eighth Amendment is addressed only to the amount of bail set for a bailable offense, but creates no right to bail for an offense made non-bailable by statute. *U.S. v. Abrahams,* 575 F.2d 3, 5 (1st Cir.1978), cert. denied, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *Atkins v. Michigan,* 644 F.2d 543, 549 (6th Cir.1981), cert. denied, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *U.S. v. Beaman,* 631 F.2d 85, 86 (6th Cir.1980); *U.S. v. Miller,* 589 F.2d 1117, 1135 (1st Cir.1978), cert. denied, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979).

■ At oral argument, the defendant contended that pretrial detention offends the presumption of innocence. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court disposed of this argument:

The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial. *Taylor v. Kentucky,* 436 U.S. 478, 485 [98 S.Ct. 1930, 1934, 56 L.Ed.2d 468] (1978); See, *Estelle v. Williams,* 425 U.S. 501 [96 S.Ct. 1691, 48 L.Ed.2d 126] (1976); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368] (1970); 9 J. Sigmore, Evidence Section 2511 (3d ed. 1940). It is "an accurate, shorthand description of the right of the accused to 'remain inactive and secure, until the prosecution has taken up its burden an produced evidence and

effected persuasion; ...' an 'assumption' that is indulged in the absence of contrary evidence." *Taylor v. Kentucky, supra,* [436 U.S.] at 484, n. 12 [98 S.Ct. at 1934, n. 12]. Without question, the presumption of innocence plays an important role in our criminal justice system *... But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.* Id. at 533, 99 S.Ct. at 1870–71. (Emphasis added.)

Congress was apparently aware of this problem by including Section 3142(j) in the Bail Reform Act, which provides: "Nothing in this Section [pertaining to pretrial detention] shall be construed as modifying or limiting the presumption of innocence." Thus, the presumption of innocence is not impaired by a refusal to admit an accused to bail on the basis of dangerousness.[7]

■ Finally, defendant claims that his pretrial detention interferes with his ability to prepare his defense. Aside from the fact that no showing was made for said assertion, defendant, by counsel's own admission, has been able to consult with his attorneys. Furthermore, Section 3142(i)(3) provides that the detention order must direct that the detainee be afforded reasonable opportunity for private consultation with his counsel. The detention order herein meets this requirement.

In the recent case of *U.S. v. Hazzard,* 598 F.Supp. 1442, (N.D.Ill.1984), the validity of the core pretrial detention provisions of 3142 were upheld.

## D. THE CLAIM THAT MAGISTRATE'S FINDINGS ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

The evidence before Magistrate Arenas was presented by Government through the oral testimony of Special FBI Agent Hill, a

---

**6.** Congress has never enacted a statutory right to bail in capital cases. See, S.Rep. 147, 98th Cong. 1st Sess. 19–20 (1983); Mitchell, *Bail Reform and the Constitutionality of Preventive Detention,* 55 Va.L.Rev. 1223 (1969).

**7.** Historically, bail has been denied as to those persons charged with capital offenses, and to those posing an unacceptable risk of flight, without any constitutional difficulties.

member of the organized crime squad in the San Juan Division. During the course of investigations carried out by that squad, Agent Hill became aware of defendant as a subject in a number of matters. During the investigation of the Taillex robbery it became apparent to the FBI San Juan Office that the perpetrators were organized crime figures. Agent Hill testified about his investigation of the robbery of approximately 770 diamonds valued at $620,000 from the Taillex Corporation offices in Caguas, Puerto Rico. He stated that his testimony was based on interviews with the abducted victim, monitored tapes, and information provided from other sources, including reliable FBI informants. Defendant, who has been in the jewelry business since the date of the events leading to his indictment in this case, conceived and planned the robbery, and conducted surveillance of the offices of Taillex. Thereafter, the other participants conducted surveillances, received inside information, gathered a robbery team, followed, abducted, and handcuffed the Taillex manager, forced him to open the safe at gunpoint with threats to him and his family. The diamonds taken by the robbery team were turned over to the defendant in exchange of $135,000.

On the aforesaid testimony, the Magistrate found probable cause to believe that defendant committed the offenses charged in the indictment.

Agent Hill further testified as to defendant's involvement in a series of murders and robberies, as follows:

1. The murder-robbery of jeweler Leo Dershowitz on February 2, 1974.

2. The murder-robbery of jeweler Howard Block on August 30, 1974.

3. The murder-robbery of jeweler Abraham Shafizadeh on July 28, 1974.

4. The conspiracy to murder and rob the owner of a gold manufacturing company in Carolina, Puerto Rico.

5. The armed robbery of the Consuegra jewelry store in Mayaguez, Puerto Rico.

6. The abduction of two employees of Gordon's jewelry store in Río Piedras, Puerto Rico, and the subsequent burglary of Gordon's on April 18, 1980.

A review of the transcript supports the following findings of fact entered by the Magistrate:

Special Agent Hill testified that the FBI's investigation of each of these crimes had determined that, as in Taillex, the defendant participated in the planning, organizing, and eventual disposal of the jewelry stolen. He testified that the defendant's involvement in the Dershowitz murder-robbery was confirmed by participants in the murder-robbery as well as tape recordings of a participant in the murder-robbery. In the Block murder-robbery, the defendant's role was confirmed again by a participant in the murder-robbery, information provided by a reliable FBI informant, as well as the FBI's investigation of the attempt by the defendant to obstruct the subsequent investigation by the Police of Puerto Rico (POPR) into the murder-robbery, by purchasing the original case file to destroy the evidence and kill the witnesses.

As to the conspiracy to murder and rob the owner of a gold manufacturing plant in Carolina, Puerto Rico, Special Agent Hill testified that the defendant's participation was confirmed by a reliable FBI informant and participants in the conspiracy. The defendant's role in the Consuegra jewelry store robbery was confirmed by participants in the robbery. Finally, the defendant's involvement in the abduction of two employees of Gordon's jewelers, and the subsequent burglary of Gordon's was confirmed by participants in both the abduction of the employees and the subsequent burglary, as well as by statements made by participants to FBI informants.

Special Agent Hill also testified, in some detail, about the FBI's investigation of the defendant's effort to buy the POPR case file in the Shafizadeh murder-robbery from an undercover police agent. He testified that the defendant's involvement in this attempt to obstruct

justice was confirmed by the undercover police agent's testimony, tape recordings of the defendant and photographs of the defendant purchasing the file. The photographs were not placed in evidence. Special Agent Hill went on to testify that the defendant had stated that he wanted the file to make the Government's evidence disappear and to find out who the Government's witnesses were, so that he could have them killed. Special Agent Hill concluded his testimony, as to this incident, by stating that the FBI has reliable source information which indicates that the defendant bought both juries in his two subsequent trials for the obstruction of justice, in the local courts. This includes defendant's declarations against penal interest. Both trials terminated without the juries reaching a verdict.

■ Defendant cross-examined Agent Hill, and at a subsequent hearing continued the Agent's cross-examination and introduced character witnesses [8] and other evidence on his behalf to establish that he is a non-violent person. The Magistrate found, however, that although defendant appeared to be an accomplished entrepreneur and a good provider, he was a danger to the community and a risk existed that he will obstruct or attempt to obstruct justice. *U.S. v. Medina*, 570 F.Supp. 853 (D.P.R. 1983). Congress intended that the concern about safety be given a broader construction than merely danger of harm involving physical violence. See *U.S. v. Provenzano*, 605 F.2d 85 (3rd Cir.1979).

Finally, the Magistrate concluded that no condition or combination of conditions would assure the safety of the Government's witnesses and the community or insure the proper administration of justice in defendant's case. The order gave the reasons for the detention as mandated by 3142(i)(1), and provided for the requirements of subsection (1)(2), (3) and (4).

■ Defendant argues that the evidence is insufficient to support the detention order because it is hearsay, and further contends that it is not "clear and convincing." Our point of departure is the statute itself. Section 3142(f) provides that at the detention hearing "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of *information* at the hearing." This language is terse and free of ambiguities. It means what it says. The judicial officer, be it a magistrate or a judge, is statutorily permitted to consider and, of course, weigh hearsay information. What the Act does not allow is to enter a finding of dangerousness or of obstruction of justice upon a preponderance of the evidence, in cases where the judicial officer must weigh conflicting evidence. To tip the scales on the Government's side in such a case is not enough. Nor is it enough to provide uncontradicted but unpersuasive evidence. However, when, as here, the information presented at the hearing was not only uncontradicted, but strong, the "clear and convincing evidence" standard has been met. Clear and convincing evidence has been defined as more than preponderance of the evidence but less than that beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 1807–1812, 60 L.Ed.2d 323 (1979); *U.S. v. Mastrangelo*, 561 F.Supp. 1114, 1120 (E.D.N.Y. 1983). The "clear and convincing standard" set forth in Section 3142(f) requires from the fact finder a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice.

■ We conclude that the Government presented clear and convincing evidence that the crime with which defendant is charged is a crime of violence, 18 U.S.C. 3142(f)(1)(a); that the defendant has had history of involvement in violent crimes and therefore is a danger to the Govern-

---

**8.** Defendant's witnesses were: Frank Forina, a San Juan wholesale jeweler; Father Vernard Kanfush, a Capuchin Franciscan; Joseph Ho-

chler, sales manager of Jewels of the World, now owned by defendant, and his wife.

ment witnesses and to the community;[9] that the defendant has, in the past, attempted to and has obstructed justice.[10] 18 U.S.C. § 3142(f)(2)(b).

██ The Court concludes that the statutory scheme of the Bail Reform Act, providing for pretrial detention, does not derogate the importance of a defendant's interest in remaining at liberty prior to trial. However, this Court must consider not only the defendant's interest, but also important societal interests to protect the integrity of the judicial process, and the safety of the community.

██ However, detention orders under the Act are neither to be routinely sought by Government nor automatically granted by the courts. Only in those cases involving a reasonably identifiable group of defendants who pose a serious risk to the safety of others, or to the administration of justice, if released, and where the strict requirements of the statute are met, should detention orders be issued.

WHEREFORE, upon consideration of the record and the transcript of the proceedings before the Magistrate, the Magistrate's two orders, arguments of counsel and briefs, the defendant's motion to revoke or modify the detention order is hereby DENIED.

IT IS SO ORDERED.

---

**9.** The defendant was once arrested and tried on an effort to buy a file from the Puerto Rico Police Department in the Shafizadeh murder-robbery from an undercover police agent. This was confirmed by tape recordings and photographs of the attempt to purchase the file to have the witness killed. His two trials on said charges concluded with two hung juries.

**10.** There was information from FBI informants that defendant tampered with the juries in two consecutive trials involving charges of having wrongfully acquired the Government's file from an undercover agent, in the Shafizadeh murder-robbery.