OPINION AND ORDER
 

 DANIEL R. DOMINGUEZ, District Judge.
 

 Codefendant Edgard Calderón-Hemández has requested the Court to revisit the determination of the Honorable Magistrate Ada M. Delgado-Colón, dated March 27, 1996, ordering Defendant detained under custody without bail. For the reasons explicated hereinbelow, after a careful review of the arguments presented by the Defendant, and considering the evidence in the record, the court declines Defendant’s request.
 

 The Magistrate Judge concluded that because an indictment was issued by the Grand Jury charging Defendant with an offense (car jacking), for which a maximum statutory term of imprisonment of ten years or more is prescribed pursuant to 18 U.S.C. § 2119, that Defendant was to be detained for his failure to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community and the appearance of the Defendant, as required. The Magistrate Judge further concluded that the Defendant endangers the safety of other persons and/or the community.
 

 “Defendant is being charged for a violent offense (carjacking) which resulted in the death of an individual and if convicted faces severe penalties which do enhance flight risks. At state level, Defendant is facing charges and pending trial for offenses which involve: four murders, and several violations of the P.R. Weapons Law, which apparently arise from the same/similar set of facts”
 

 The Court is required to make a de novo review of the contested Detention Order,
 
 U.S. v. Tortora,
 
 922 F.2d 880, 883, n. 4 (1st Cir.1990). A hearing was held on the 2nd day of July 1996.
 

 Defendant produced the testimony of José A Meléndez Aponte, an expert on polygraph examinations, who concluded through the use of polygraph techniques, that the Defendant was telling the truth when he stated that he did not participate in the car jacking and murders charged in the indictment.
 
 [1]
 

 The United States produced the testimony of Mr. Jesús M. Carrasquillo Caraballo, an eyewitness to the crime who, was a heroin addict at the time he allegedly witnessed the facts. The witness admitted to the use of marijuana since the age of nine, to the use of heroin since the age of sixteen, and to the use of crack since the age of seventeen. In order to maintain his addiction, the Defendant stole automobile parts and sold crack at public housings. He also stole from his parents, to whom he also lied about his condition as an addict. Athough the events he observed occurred at around 2:30 in the afternoon of March 13, 1994, it was not until March 18,1996, that he informed the facts of the incident to a local (state) District Attorney. The eyewitness further admitted to having used two bags of heroin on or about 9:30 a.m., the morning the events took place.
 

 Mr. Carrasquillo Caraballo stated that around 2:30 p.m., Mr. Luis Castro arrived at the Villa Aegres in Gurabo, where Mr. Caraballo lived. Mr. Castro stopped there to call a girl friend. He arrived in a red Ford Mustang 5.0 liter car
 
 [2]
 
 . While Castro was calling the girl, a white Toyota parked ahead
 
 *110
 
 of the Mustang. A red Honda Prelude arrived immediately thereafter and parked behind the red Mustang. A masked man carrying a long weapon stepped out of the red Honda Prelude and threateningly yelled improprieties to Luis Castro. Castro ran and the masked man fired the weapon. Castro fell, the masked man continued to fire at Castro as he continued to approach him. Another masked man immediately thereafter got out of the Red Mustang, approached Castro, and also fired. The person who first left the Honda Prelude, and originally fired, removed his mask as he approached Castro in order for the victim to identify him. He continued to shoot at Castro while removing the mask. The person who removed his mask was identified by the eyewitness as Defendant Edgard Calderón Hernández also known as “Prieto Capota”. The witness informed of knowing the aggressor in the past, three to four years prior thereto, and of having last seen him one month prior to the date of the narrated facts. The other masked man could not be identified because he did not remove his mask. The other three passengers in the red Mustang were forcibly removed from the ear by other persons in the white Toyota and the Red Honda Prelude and placed in those two cars.
 
 [3]
 
 The Defendant then drove away the red Mustang.
 

 In the cross examination Mr. Carrasquillo admitted to the drug use and addiction previously stated. He also admitted to the selling of drugs in public housings, and to the stealing of auto fixtures and properties, as well as to having stolen from his parents, and having lied to them about his addiction. Carrasquillo further admitted to having used drugs the morning of the facts and to knowing the victim from having previously conspired with him to steal money.
 

 Because Defendant has been indicted by a Grand Jury of carjacking under 18 U.S.C. § 2119(3) wherein a death occurred, and which indubitably constitutes “a crime of violence” under 18 U.S.C. § 3142(f)(1)(A);
 
 United States v. Singleton,
 
 16 F.3d 1419 (5th Cir.1994), a rebuttable detention presumption is created under 18 U.S.C. § 3142(e),
 
 United States v. Dillon,
 
 938 F.2d 1412, 1416 (1st Cir.1991) (per curiam). Said presumption entails that “subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure ... the safety of the community” 18 U.S.C. § 3142(e). The presumption “shifts to the Defendant the burden of production, not the burden of persuasion”,
 
 United States v. Jessup,
 
 757 F.2d 378, 381 (1st Cir.1985).
 

 The rules of evidence do not apply in detention hearings, “The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.” 18 U.S.C. § 3142. “The judicial officer, be it a magistrate or judge, is statutorily permitted to consider and weigh hearsay information.”
 
 U.S. v. Acevedo-Ramos,
 
 600 F.Supp. 501, 509 (D.P.R.1984). The government may use reliable hearsay evidence at detention hearings.
 
 United States v. Acevedo-Ramos,
 
 755 F.2d 203, 207 (1st Cir.1985). Although the rules of evidence do not apply, the court is guided by the standard of “clear and convincing evidence”. 18 U.S.C. § 3142(f);
 
 United States v. Acevedo-Ramos,
 
 600 F.Supp. at 509.
 
 [4]
 

 To rebut the presumption in the case of caption, Defendant produced a polygraph examination performed by an expert. Although results of polygraph examinations are generally inadmissible because they are “unreliable”,
 
 United States v. Scarborough,
 
 43 F.3d 1021, 1026 (6th Cir.1994) cited and followed at
 
 United States v. Black,
 
 78 F.3d 1, 7 (1st Cir.1996);
 
 United States v. Trenkler,
 
 61 F.3d 45, 58 (1st Cir.1995), the Court admitted, evaluated and considered the results, as part of the totality of circumstances, as mandated by the statute, 18 U.S.C. § 3142(g)(l)(2)(3)(A)(B)(4).
 

 
 *111
 
 In order to decide whether there are conditions of release that will reasonably assure the appearance of the person as required, and the safety of any other person and the community, the Court must consider the following factors:
 

 1. The nature and circumstance of the offense alleged, including whether the offense is a crime of violence.
 

 2. The weight of the evidence.
 

 3. The history and characteristics of the person.
 

 A. Family ties, employment, community ties, past conduct, a criminal record, etc.
 

 B. Whether at the time of the current offense or arrest the person was on probation or parole, etc.
 

 4. The nature and seriousness of the danger to any person or the community that could be passed by the persons released.
 

 The Court examines the criteria seriatim, in order to determine the detention matter.
 

 A. Crime of Violence
 

 There is no doubt that a carjacking wherein a victim is murdered is a crime of violence.
 
 United States v. Singleton
 
 (supra). The United States provided direct evidence of the carjacking and of one of the murders linking the Defendant to said crimes and information (hearsay) on the buming/murder of the three other passengers.
 

 B. The Weight of the Evidence
 

 Notwithstanding the fact that the only eyewitness to the crime was an addict who had consumed heroin early in the morning of the day of the crime, the witness credibly testified that he was “stimulated” but “conscious.” This particular witness knew the Defendant three or four years prior to the crime and had seen him one month prior thereto. The eyewitness attention was focused because he had known the victim. The version of the eyewitness is not incredible, the jury will have the final word after the eyewitness is subject to the rigors of cross examination. The polygraph examination of Defendant does not override the eyewitnesses’ linkage of Defendant to the crime.
 
 [5]
 

 C. The History and Characteristics of the Person
 

 The Defendant presented a proffer accepted by the United States that Defendant did not have a record of any convictions as an adult and that he is not a drug user. The probation report informs that the Defendant accepted an adjudication on an assault incident for which he was sentenced to six months on probation, at the age of fourteen. The sentence was extended to one year for poor adjustment to supervision. Notwithstanding the Court considers that overall this criteria favors the Defendant.
 

 D. The nature and seriousness of danger posed to any person or the community by release.
 

 The Defendant has been identified as the person directly responsible for a carjacking and a murder with a long weapon. There are few eyewitnesses, and one of them gave testimony that he fears for his life notwithstanding being under protection. These facts clearly point toward detention.
 

 To recapitulate, the seriousness of the crime as a crime of violence, and the compelling weight of the evidence against Defendant, as rendered by the eyewitness, override Defendant’s characteristics and the polygraph examination provided by Defendant. The Court further notes that there is a serious risk-of-flight because the sentence that may be imposed is life.
 

 Defendant urges the Court to grant Defendant pre-trial release as was authorized by trial courts in the cases of
 
 United States v. Patriarca,
 
 948 F.2d 789 (1st Cir.1991) and
 
 United States v. O’Brien,
 
 895 F.2d 810 (1st Cir.1990). In these cases the appellate court confirmed the pre-trial release of Defendants. Patriarca was reputably the former boss of the New England Mafia family. He was accused under Rico, 18 U.S.C. § 1962 et see., and five counts of violating the Travel Act. 18 U.S.C. § 1952, which are crimes of
 
 *112
 
 violence under 18 U.S.C. § 3156(a)4(A), which also triggers a rebuttable detention determination under 18 U.S.C. § 3142(f)(1)(A). There are, however, various important distinctions that need to be considered. For instance, Patriarca was “not charged with any personal acts of violence.”
 
 United States v. Patriarca,
 
 at 792, and “all the evidence was documentary; there were no testimonial witnesses, thus no one for appellee to threaten if he were released.”
 
 United States v. Patriarca,
 
 at 793. Furthermore, “Patriarca [suffered] from recurrent bladder cancer and [required] hospitalization every three months.”
 
 United States v. Patriarca, Id.
 
 Hence, Patriarca’s “poor health rendered flight [unlikely].”
 
 Id.
 
 Because of these and other unique circumstances, the judge “devised an innovative and extensive group of conditions”
 
 United States v. Patriarca, Id.
 
 The Court is not prepared to devise or entertain similar “innovative” conditions because Defendant’s case is limpidly distinguishable.
 

 In the instant case and contrary to Patriarca, there are personal acts of violence attributed to Defendant which may potentially compromise the safety of others. In addition, and contrary to Patriarca, the Defendant in this case does not have cancer, or any terminal illness which requires frequent hospitalizations. For the reasons expounded hereinabove, the Court will not follow the trial court’s “innovative conditions” set forth in the Patriarca case.
 

 In
 
 United States v. O’Brien,
 
 895 F.2d 810 (1st Cir.1990) a high ranking federal drug agent with eighteen years of service was indicted for trafficking cocaine in violation of 21 U.S.C. §§ 841 and 846. Although originally detained because the Magistrate found that Defendant presented a serious risk of flight
 
 [6]
 
 , Defendant was ultimately authorized to be released in home detention, wearing an electronic bracelet and providing his home as guarantee. The ease is analogous to the instant case in that violations to the Controlled Substance Act, 21 U.S.C. § 801, for which a maximum term of imprisonment of ten years or more is set, trigger the rebuttable presumption that no condition or combination of conditions exists that will reasonably assure a Defendant’s appearance. 18 U.S.C. § 3142(e). Defendant emphasizes the expressions made by the Court as to the effectiveness, security, and reliability of an electronic bracelet (only five out of 200 persons who wore the bracelet actually fled). However the Appellate Court recognized that “the bracelet would be used only where the Defendant would otherwise be detained based on the risk of flight or danger to the community.”
 
 United States v. O’Brien
 
 (supra) at 816.
 

 The Appellate Court concluded that the judgment of release “was a close one” (Id). As previously stated, the Court deems that Defendant poses a “risk of flight and danger to the community” which makes the use of a bracelet, impractical, inadequate, and risky. Moreover, in the instant ease Defendant has not engaged in a “distinguished law enforcement career,”
 
 United States v. O’Brien,
 
 at 817, and has not proffered evidence of “indigence [that] inhibits his ability to travel”
 
 United States v. O’Brien,
 
 at 817.
 

 We need go no further. In view of the above, the Court declines to follow the discretion of the trial court confirmed in
 
 United States v. O’Brien
 
 (supra) and
 
 US. v. Patriarca
 
 (supra). The court further concludes, based on the standard of “clear and convincing evidence”, that Defendant has failed to rebut the statutory presumption of 18 U.S.C. § 3142(e). Hence, the detention order of Honorable Magistrate Judge Aida M. Delgado shall be and hereby is sustained.
 

 IT IS SO ORDERED.
 

 [1]
 

 . The indictment reads as follows:
 

 “On or about March 12, 1994, in the District of Puerto Rico and within the jurisdiction of this Court, Edgar Calderón Hernández, a.k.a. "Prieto Capota" and Luis A. Rosado Jiménez, a.k.a. “Hulk”, aided and abetted by each other, as well as by others unknown to this Grand Jury, did, while in possession of a firearm, as this term is defined in Title 18, United States Code, Section 921(a)(3), take a motor vehicle, that is, Ford Mustang, 1990 5.0 Liter model, Tag Number BSJ-531 and Vehicle Identification Number 1FACP45E6LF171850, said motor vehicle having been transported, shipped or received in interstate or foreign commerce, from the presence of Edison Marrero Vázquez, José Manuel Alamo Díaz, and Carlos Enrique Ortiz Feliciano — whose death resulted as a consequence of this carjacking' — by force and violence or by intimidation. All in violation of Title 18, United States Code, Sections 2 and 2119(3).”
 

 [2]
 

 . The indictment identifies the "5.0 liter car” as a Ford Mustang.
 

 [3]
 

 . The United States proffered hearsay evidence that the three passengers were subsequently brutally bumed/murdered after being forced to drink gasoline.
 

 [4]
 

 . “Clear and convincing evidence” is defined as more than preponderance of the evidence, but less than beyond a reasonable doubt.
 
 See Addington v. Texas
 
 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979);
 
 U.S. v. Acevedo-Ramos
 
 600 F.Supp. at 509.
 

 [5]
 

 . The Court further notes that at trial the results of the polygraph test submitted into evidence in the detention hearing will most probably not be admissible because "they are inherently unreliable."
 
 United States v. Scarborough
 
 (supra) at 1026.
 

 [6]
 

 . No condition or combination of conditions of release would, reasonably assure Defendant's appearance.
 
 United States v. O’Brien
 
 (supra) at 811.