**UNITED STATES of America**

**v.**

**Samuel Joseph MELVILLE, George Demmerle, John David Hughey, III, and Jane Lauren Alpert, Defendants.**

**No. 69 Cr. 811.**

United States District Court
S. D. New York.

Nov. 15, 1969.

Robt. M. Morgenthau, U. S. Atty., for the Government.

Robt. Projansky, New York City, for Melville.

Ernst Rosenberger, New York City, for Demmerle.

Frederick Cohen, New York City, for Hughey.

Mortimer Todel, New York City, for Jane L. Alpert.

**OPINION AND ORDER ON APPEAL UNDER 18 U.S.C. § 3147**

FRANKEL, District Judge.

Four defendants appealing from a bail determination are charged with conspiring to explode bombs in a number of federal and other buildings in New York City. They seek review under 18 U.S.C. § 3147(a) of a commissioner's determination that they must post bail in amounts ranging from $100,000 to $300,000 as a condition of release pending further proceedings against them.[1] The objectives of the alleged conspiracy are, obviously, terrifying. The matter has generated considerable publicity and public concern, which the court, whether "judicially" or not, has inevitably noticed. In the circumstances, although the problem before the court calls for speedy resolution, it seems appropriate to make explicit at least the main factors affecting the decision. First, then, as to some first principles:

(1) While the *charge* is grave and alarming, the defendants are presumed to be innocent. The point must not be pressed to a logical extreme. Clearly, the very notion of bail entails the premise that an accusation is in itself a fact of legal consequence. Nevertheless, the presumption of innocence is basic among both the statutory and constitutional principles affecting bail.

(2) While we hear much these days of "preventive detention" (and the phrase has been hurled accusing-

[1]. Defendants were arrested in the early morning of November 13. About twelve hours later, at one p. m., the commissioner fixed bail at $500,000 for each of them. Their attempt an hour later to have review of this determination by the court was rejected as premature in view of the seemingly exclusive provision for review by the commissioner himself after 24 hours under 18 U.S.C. § 3146(d). On the morning of November 14, having failed to make bail, they appeared before the commissioner under the latter section, and he reduced bail to the differing amounts now in question. Then, in the afternoon of the same day, they came to the court for the hearing resulting in the instant decision. This court, in addition to hearing extended argument, has considered the transcript of the commissioner's hearing as well as the sworn complaint of an F.B.I. agent and the affidavit of an assistant United States Attorney, both of which were before the commissioner. Last evening, finally, counsel for Hughey was permitted to serve and file an affidavit asserting the limited ability of this defendant's father to assist with the posting of bail.

ly by defense counsel in the present case), there is no authority under existing law for confining defendants in noncapital cases prior to trial on the ground that they are likely to commit crimes other than the one already charged against them. Whatever some future Congress may do, the one that enacted the Bail Reform Act of 1966, by which we are now governed, made this plain beyond serious question.[2]

■ (3) The task in setting conditions of release consists exclusively of ascertaining the least onerous conditions "which will reasonably assure the appearance of the person for trial * * *." 18 U.S.C. § 3146(a); see also Wood v. United States, 129 U.S.App.D.C. 143, 391 F.2d 981 (1968); Brown v. United States, 392 F.2d 189 (5th Cir. 1968); United States v. Erwing, 268 F.Supp. 879 (N.D.Cal.1967).

While the principles are quickly stated, their implementation calls for a com-

pendious judgment upon an array of factors, none of which is neatly quantifiable, and all of which entail disconcerting elements of uncertainty, insufficient knowledge and risk. Thus, in normally hasty proceedings, on evidence which need not and cannot conform to the orthodox rules of admissibility, 18 U.S.C. § 3146(f), the judicial officer fixing conditions of release is instructed to "take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings." 18 U.S.C. § 3146(b). The complexities soon multiply in all but the simplest cases. So, to stop for only a single example, while "danger to any other person or to the community" (see note 2, *supra*) is not in itself a proper

2. 18 U.S.C. § 3146 states the conditions and considerations governing "[r]elease in noncapital cases prior to trial." § 3148 treats the separate subject of "[r]elease in capital cases or after conviction." The latter section directs treatment "in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee *or pose a danger to any other person or to the community.*" (Emphasis added.) The emphasized words in the quoted language from § 3148 plainly and explicitly make "danger" a concern in capital cases or after conviction, a factor signally and deliberately absent from § 3146, which applies in the present situation. The effect of this difference in language seems plain enough from the text alone. See, e. g., Banks v. United States, 414 F.2d 1150, 1152 (D.C.Cir.1969); Committee on Civil Rights, Proposed Federal Legislation on Preventive Detention, 24 The Record of the Association of the Bar of the City of New York 446, 448 (1969); Note, Preventive Detention before Trial, 79 Harv.L.Rev. 1489 (1966). If the language could be thought doubtful, however, the legislative history makes pellucid that Congress meant what it said.

Thus, the Report of the House Committee, H.R.Rep. No. 1541, 89th Cong., 2d Sess. 5–6 (1966), said:

"This legislation does not deal with the problem of the preventive detention of the accused because of the possibility that his liberty might endanger the public, either because of the possibility of the commission of further acts of violence by the accused during the pre-trial period, or because of the fact that he is at large [sic] might result in the intimidation of witnesses or the destruction of evidence. It must be remembered that under American criminal jurisprudence pretrial bail may not be used as a device to protect society from the possible commission of additional crimes by the accused." U.S. Code & Admin.News, p. 2296.

See, also, *id.* at 15; S.Rep. No. 750, 89th Cong., 1st Sess. 5, 6, 9, 11, 19 (1965).

In arguments before this court, on the present occasion and others, the United States Attorney has tended to press the claim of "danger" in noncapital cases before trial notwithstanding the seemingly clear exclusion of this consideration under the statutory scheme. For the reason sketched herein, this position appears to be erroneous.

consideration for pretrial bail in a non-capital case, we doubt that a defendant's powerful disposition to incur further criminal liabilities could be ignored utterly in judging what will "reasonably assure" his appearance for trial.

"The Bail Reform Act creates a strong policy in favor of release on personal recognizance, and it is only if 'such a release would not reasonably assure the appearance of the person as required' that other conditions of release may be imposed." Wood v. United States, *supra*, 391 F.2d at 983. Those words, fairly characterizing the terms of the statute, seem to tell the whole story in terms of *release*—on selected conditions in progressive degrees of onerousness, but release on some conditions in any event. It does not seem to follow, however—it surely has not followed as a matter of actual practice—that the conditions for release before trial in noncapital cases must be such that every defendant will in fact be set free while awaiting trial. While the statute, § 3146(a), does not say this in so many words, it has been thought generally that there are cases in which no workable set of conditions can supply the requisite reasonable assurance of appearance for trial. To state the extreme case, which is not a hypothetical, the strong presumption favoring release may disappear for a defendant charged with a grave offense, with powerful evidence against him, who lacks family ties or employment or resources or any roots in the community, and is possessed of a poor record for fidelity to court engagements. Such a defendant may have to stay in jail pending a trial to be brought on with utmost possible speed.

The defendants now before the court have not in terms been denied all possibility of release pending trial. They are to be freed, the commissioner has held, upon the posting of bail bonds of from $100,000 to $300,000, the new amounts proposed by the United States Attorney on November 14 in lieu of the $500,000 across the board proposed by him and accepted by the commissioner the day before.[3] But it is apparent that in this instance, as in many others familiar to all of us, the statement of the astronomical numbers is not meant to be literally significant. It is a mildly cynical but wholly undeceptive fiction, meaning to everyone "no bail." There is, on the evidence adduced, no possibility that any of these defendants will achieve release by posting bond in anything like the amount which has been set.

According to the government's affidavit, the defendant Melville, for whom the highest figure is asked, is unemployed; his last employment as a designer of engineering systems, ended a year ago. He lives in a Manhattan apartment in a depressed area, paying a rental of $30 a month. He is separated from a wife with whom he has an 8-year-old son, and is said to be in default on support obligations. It seems clear that $300,000 is effectively as meaningless a figure for him as was $500,000. And the government, as in the cases of the other three defendants, has been unable, after earnest inquiry from the court, to explain on any relevant basis what prompted it to change the recommendation by $200,000.

The court has reviewed, similarly, the facts about the other three defendants and the figures set for them—Demmerle $200,000, Hughey $150,000, and Alpert $100,000. While the details differ, a comparable conclusion is compelled by the facts as they now appear: it is

3. It is not perfectly clear that the commissioner, at the hearing of November 14, was prepared to give as full a review of the release conditions as that contemplated by 18 U.S.C. § 3146(d). He observed toward the end of the hearing that his disposition was simply to leave the bail at $500,000 for each defendant until at least November 18, the date he had set for a hearing when he first fixed bail on November 13. He stated (Tr. 37–38) that he was only granting the reductions proposed by the United States Attorney because of "the consent by the government * * *."

overwhelmingly likely that none of them can approach anything close to the amount of bail prescribed for his release.

■ While that conclusion, like all the gravest ones in court, is not a mathematical certainty, it is a solidly based working hypothesis. It becomes material, then, to ask whether these defendants, or any of them, are of such character that release should simply and candidly be denied until they have been tried. Cf. Russell v. United States, 402 F.2d 185, 186 (D.C. Cir. 1968). Before that question could be answered affirmatively, assuming (as the court does) that such an answer is sometimes necessary and within the court's power, it would have to be shown that there was no combination of possibly workable conditions that could "reasonably assure * * * appearance." By referring to some "combination of *possibly* workable conditions," the court means to be hedging somewhat. The phrase is not intended necessarily to signify conditions the defendants could surely meet. It is meant to imply a demanding judicial duty to experiment with conditions that at least may prove possible, and to settle upon impossible conditions—i. e., deny bail—only if experimentation discloses this to be the only acceptable course.

Taking this formulation as a guide for now, the court concludes that the commissioner's order cannot stand because it amounts practically to a denial of release conditions in a case where justification for this extreme result is not established. Lesser conditions, if they are met, will undoubtedly be attended with risk. On the other hand, there is no certainty that any of the defendants can meet the

amended conditions the court will now order. But both kinds of potential discomfiture inhere in the recurrent agony of hard decisions under the Bail Reform Act. It is some consolation that, as has been noted, no such decision need be absolutely final.

■ Proceeding from these generalities, the court recalls again that the pending charge is a serious one, though its five-year maximum term is by no means in the highest range of those on which the court sets moderate bail, or allows release on personal recognizance, every day. The evidence (as the prosecution describes it) is seemingly substantial in the cases of two defendants (Melville and Demmerle), far less against the other two (Hughey and Alpert).[4] None of the defendants has an impressive employment record. None seems deeply rooted, but all have ties of consequence and reasonable length to New York City —Demmerle and Alpert apparently for all their lives, Hughey for the last three to five of his 22 years, Melville for the last 14 years. Some or all appear to be "protesters," at war with the established order and powers, tending toward lawless acts reflecting such outlooks, but not otherwise prone to the more standard varieties of conduct known to the criminal courts. Since none of them has a record of major crime, none has established major "credit" of the kind pertinent under 18 U.S.C. § 3146(b) in its reference to a defendant's "record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings." For what it is worth, however, all seem to have appeared when required to answer such in-

---

4. The statute, § 3146(b), directs that the officer setting bail should consider, *inter alia*, "the weight of the evidence against the accused," a seemingly straightforward mandate that is nearly impossible to administer. In the present case, the prosecution mentions almost nothing that amounts to specific "evidence" against Hughey and Alpert. The standard reluctance of the government about discovery in criminal cases, compounded here perhaps by other concerns, is a large obstacle. There was an offer to confide to the court *in camera* and *ex parte* some of the government's expected proof, but the court sees no basis for supposing that Congress meant to countenance any such thing on questions of pretrial bail. The course followed by the court—giving some weight, but not too much, to the conclusory representations by the prosecution—is not solidly satisfying, but is the lesser of the seemingly available evils.

fractions of the law as those with which they have heretofore been charged.

As to amounts of bail that might be reachable, Hughey, Demmerle and Melville indicated to this court that they *might* be able to raise $5,000, although Melville spoke of $15,000 at his earlier appearance before the commissioner. The volunteered figure for Alpert was $10,000. We are at a stage, however, where a defendant is least likely to inflate estimates of his resources. Defense counsel acknowledged in each case that the utmost efforts had not yet been expended in probing toward the limits of their clients' abilities to raise bail. The United States Attorney, with understandable and permissible vagueness at this stage, reports that his investigations suggest possible resources beyond those thus far suggested by the hearings before the commissioner and the court.

Taking all the circumstances together, the court concludes as of now that the defendants may be able to post bail bonds in the following amounts: $50,000 each for Melville and Demmerle, $25,000 for Hughey, and $20,000 for Alpert. Until or unless strenuous efforts have been exhausted in vain to meet these amounts, they will be set among the respective conditions of release for each defendant. This is not to forecast that the amounts will be reduced at any time. It is merely to underscore the obvious point that matters like this remain open.

In addition to bonds in the foregoing amounts, the court prescribes as further conditions of release the following:

(1) Each defendant will report once daily in person to the United States Attorney, at a time and place to be agreed upon or to be specified by the court if agreement proves impossible.

(2) All defendants are to remain in New York County, except that Demmerle may go to Kings County once weekly for visits to his son, reporting the day and time in advance to the United States Attorney.

Prior to release of any defendant upon the posting of bail, he is to appear before me, or before another judge of the court in my absence, for appropriate instructions in accordance with 18 U.S.C. § 3146(c).

So ordered.