**UNITED STATES of America, Plaintiff,**

v.

**Raymond M. FREITAS, et al., Defendants.**

**No. CR–85–0025 EFL.**

United States District Court, N.D. California.

Feb. 21, 1985.

Eric Swenson, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Cristina C. Arguedas, Cooper & Arguedas, Berkeley, Cal., for defendants.

## DETENTION ORDER

LYNCH, District Judge.

Defendant Raymond M. Freitas has moved to revoke or amend a pretrial detention order issued by a United States magistrate pursuant to the recently enacted Bail Reform Act of 1984 ("the Bail Act"), Pub.L. No. 98–473, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1837, 1976 (to be codified at 18 U.S.C. §§ 3141–3151). The defendant is charged with manufacturing methamphetamine in violation of 21 U.S.C. section 841(a)(1), and with conspiracy to commit the above offense in violation of 21 U.S.C. section 846. On December 24, 1984, a hearing was held before Magistrate Wayne D. Brazil which served as both the defendant's preliminary examination and his detention hearing under the terms of the Bail Act. Based upon the information presented at the hearing, the Magistrate made a finding of probable cause and also concluded that the defendant should be detained pending trial. In support of his present motion to revoke or amend the detention order, the defendant contends (1) that the Bail Act is unconstitutional on its face and as applied in this case, and (2) that there are reasonable conditions which can be imposed upon his release sufficient to assure his presence at trial and the safety of any person and the community.

The Bail Reform Act of 1984 makes substantial revisions in the federal law governing pretrial release of criminal defendants. Most significant in this case are the changes which now compel federal judges to consider community safety in setting nonfinancial conditions of release and to order the pretrial detention of certain defendants who, if released, are likely to flee or endanger other persons and the commu-

nity. Section 3142 of the Bail Act provides that a judicial officer shall issue an order pending trial to detain a defendant if, after a hearing, the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute specifies four factors which the court is required to consider in making a determination as to whether a defendant should be released or detained: (1) the "nature and circumstances of the offense charged," including whether the crime involves a narcotic drug, (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). At the detention hearing, the defendant has a right to be represented by counsel, to testify and present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to offer any other relevant information by proffer or otherwise. 18 U.S.C. § 3142(f). As for the standard of proof that should apply to these proceedings, the statute provides that a finding of dangerousness must be supported by "clear and convincing evidence," but is silent on the question of how much proof is necessary to support a finding that the defendant presents a flight risk. *Id.* The Act also states that where the judicial officer finds that there is probable cause to believe the person committed a serious drug offense, including one of the crimes with which the defendant is charged here, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person or the safety of the community. 18 U.S.C. § 3142(e).

## I. CONSTITUTIONAL RIGHT TO BAIL

The defendant argues that the Bail Act is unconstitutional on its face since it infringes an asserted right to bail derived from the Eighth Amendment. It is not clear whether the defendant objects to the Bail Act on the ground that Congress may never provide for pretrial detention without bail or whether he only contends that danger to the community is an insufficient justification for denying bail. Neither argument has merit.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.Const. Amend. VIII. Although the language of the Eighth Amendment does not explicitly grant a right to bail, the defendant contends that such a right is implied. The Supreme Court has never firmly decided the issue. In *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), the Supreme Court held that bail set at $50,000 for defendants accused of violating the Smith Act was excessive. Since the defendants in *Stack* had a statutory right to bail, the Court was not confronted with the question of whether the right to bail is constitutionally protected. In dictum, however, the Court stressed the importance of bail in protecting the liberty interests of defendants not yet proven guilty:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a noncapital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction.... Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

342 U.S. at 4, 72 S.Ct. at 3.

The Supreme Court discussed the subject of bail again later in the same term in *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). In *Carlson*, the Court upheld the pretrial detention of alien communists pending civil deportation proceedings. The majority rejected the argument that the Eighth Amendment requires

the same reasonable bail for aliens subject to deportation as it does for citizens charged with bailable criminal offenses. In support of its ruling, the Court stated:

> The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, the very language of the Amendment fails to say all arrests must be bailable. We think, clearly, here that the Eighth Amendment does not require that bail be allowed under the circumstances of these cases.

342 U.S. 545–46, 72 S.Ct. at 536–37.

■ The defendant argues that *Carlson* should be strictly limited to its facts. Yet, while the phrase "under the circumstances of these cases" leaves open the possibility that the Eighth Amendment might require bail in a case that did not involve the deportation of aliens, the Court was unmistakably direct in its assertion that Congress has the power to delineate those cases in which bail shall not be permitted. Even though there exists a strong statutory tradition in favor of bail for noncapital crimes, this Court agrees with the *Carlson* dictum that the excessive bail clause of the Eighth Amendment does not preclude Congress from enacting a law that provides for pretrial detention without bail in certain types of cases. *See United States v. Edwards*, 430 A.2d 1321, 1330–31 (D.C.Ct.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *United States ex rel. Covington v. Coparo*, 297 F.Supp. 203, 205–06 (S.D.N.Y.1969). In *Edwards*, the Court of Appeals for the District of Columbia upheld a pretrial detention statute upon which the Bail Act has been largely modeled. After considering in detail both the colonial history of bail and the history of the passage of the Bill of Rights, the *Edwards* court determined that the primary purpose of the bail clause was to limit the discretion of the judiciary in setting individual bail, not to restrict Congress' power to deny bail in appropriate cases. 430 A.2d 1326–31.

The defendant's argument that pretrial detention in noncapital cases is unconstitutional under the Eighth Amendment is further undercut by his own recognition that bail may be denied where important societal interests are at stake, such as the need to protect jurors or witnesses who might be threatened if the defendant were released, *Carbo v. United States*, 82 S.Ct. 662, 668, 7 L.Ed.2d 769 (1962) (Douglas, Circuit J.); *United States v. Wind*, 527 F.2d 672, 675 (6th Cir.1975); *United States v. Gilbert*, 425 F.2d 490, 491 (D.C.Cir.1969), or to ensure the defendant's appearance at trial, *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *United States v. Melville*, 306 F.Supp. 124, 127 (S.D.N.Y.1969). In granting courts the authority to deny release to those defendants who present an especially serious threat to the safety of the community, Congress has responded rationally to alarming statistics which indicate a high rate of recidivism among released defendants. H.Comm. on the Judiciary, Bail Reform Act of 1984, H.Rep. No. 1121, 98th Cong., 2d Sess. 10–11 (1984); S.Comm. on the Judiciary, Comprehensive Crime Control Act of 1983, S.Rep. No. 225, 98th Cong. 1st Sess. 6 (1983), U.S.Code Cong. & Admin.News 1984, p. 1; S.Comm. on the Judiciary, The Bail Reform Act of 1983, S.Rep. No. 147, 98th Cong., 1st Sess. 32–33 (1983).

■ Although the concept of permitting an assessment of the defendant's dangerousness represents a significant change in federal bail law, this Court is satisfied that Congress' determination of the need to protect the community represents a sufficiently compelling reason to detain an accused

prior to trial. The Supreme Court has not confronted this precise issue, but a recent due process case upholding the pretrial detention of juveniles on the basis of dangerousness strongly suggests that the Eighth Amendment does not foreclose a court from considering this factor in denying bail to adults. *Schall v. Martin,* —— U.S. ——, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). *See also United States v. Hazzard,* 598 F.Supp. 1442 (N.D.Ill.1984). In *Schall,* the Supreme Court emphasized "the legitimate and compelling state interest in protecting the community from crime" and it specifically rejected the argument that future criminal conduct cannot be predicted with sufficient accuracy to meet the objectives of a preventive detention statute. 104 S.Ct. at 2410, 2417–18. Accordingly, this Court concludes that the Eighth Amendment does not forbid pretrial detention based on dangerousness.

## II. UNREASONABLE DENIAL OF BAIL

The defendant also argues that even if the Eighth Amendment does not imply a right to bail in all noncapital cases, it must nevertheless preclude an arbitrary or unreasonable denial of bail. Specifically, the defendant objects to the provision in the Bail Act which creates a rebuttable presumption in favor of detention where the court finds probable cause to believe the defendant committed certain drug offenses punishable by a term of imprisonment of ten years or more. 18 U.S.C. § 3142(e). The defendant contends that the Eighth Amendment guarantees him an individualized analysis of his eligibility for bail and that the statutory presumption has the effect of denying bail to an entire class of persons.

In support of this argument, the defendant relies on an Eighth Circuit case which struck down a provision in the Nebraska State Constitution that prohibited bail for all persons accused of forcible rape. *Hunt v. Roth,* 648 F.2d 1148 (8th Cir.1981), *vacated as moot sub nom., Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam). Because the Supreme Court vacated the judgment of the lower court, the precedential value of *Hunt v. Roth* is limited. In any event, the case is easily distinguished. In *Hunt v. Roth,* the court agreed that Congress and the states have the power to legislate as to the right of bail for certain offenses, but it held that Nebraska had acted arbitrarily in denying judicial officers any discretion whatsoever:

> The fatal flaw in the Nebraska constitutional amendment is that the state has created an irrebuttable presumption that every individual charged with this particular offense is incapable of assuring his appearance by conditioning it upon reasonable bail or is too dangerous to be granted release. The constitutional protections involved in the granting of pretrial release by bail are too fundamental to foreclose by arbitrary state decree. The state may be free to consider the nature of the charge and the degree of proof but it cannot give these factors conclusive force.

648 F.2d at 1164–65.

In contrast with the Nebraska law at issue in *Hunt v. Roth,* the Bail Act does not compel the detention of any person solely on the basis of the crime with which that person has been charged. A detention order may only be issued after a hearing at which the defendant may offer information in support of his release. 18 U.S.C. § 3142(e). Before detaining a defendant, the statute instructs the court to consider whether some form of conditional release will be adequate and the list of relevant factors is clearly designed to promote a broad and searching inquiry. 18 U.S.C. § 3142(g). The defendant argues, however, that the individual hearing may be eviscerated for those persons to whom the presumption applies. The defendant assumes that an accused person who has just been arrested is at a severe disadvantage in producing credible information to affect his bail determination and that in most cases it will be impossible for the accused to meet the extremely difficult burden of proving a negative, *i.e.,* that he will not flee

and that he will not pose a danger to the community.

The Court is not persuaded that the rebuttable presumption in the Bail Act so handicaps a criminal defendant as to create a category of cases for which bail will not be permitted. Since the subject of the inquiry is the defendant himself, much of the information that would be helpful to the court in setting release conditions is likely to be within the defendant's possession. In addition, the statute provides the defendant with assistance of counsel to help him assemble and present any other relevant information to the court. 18 U.S.C. § 3142(f). In most cases, the court will also have the benefit of a report from the probation office.

■ Moreover, upon closer examination of the statute, it does not appear that the rebuttable presumption is intended to have the effect which the defendant ascribes to it. A presumption may affect either the burden of proof or merely the burden of producing evidence. Neither the language of the Bail Act nor its legislative history clearly indicates which type of presumption Congress intended.[1] The Senate Judiciary Committee reports reveal that Congress was particularly concerned by evidence showing that persons involved in drug trafficking pose significant risks of flight and further criminal activity if released before trial. S.Rep. No. 225 at 19–20; S.Rep. No. 147 at 46–47. Based upon this evidence, it is apparent that Congress considered a serious drug charge to be highly probative on the issue of detention.[2] Read in its entire-

ty, however, the Bail Act does not support an interpretation of the presumption as shifting the burden of proof on release conditions to the defendant. On the contrary, the Bail Act specifically requires that a finding of dangerousness be supported by "clear and convincing" evidence. 18 U.S.C. § 3142(f). In order to read this provision consistently with an interpretation that the presumption shifts the burden of proof to the defendant, it must be assumed that Congress intended to eliminate the "clear and convincing" standard when the presumption is in force. Such a reading strains the plain meaning of the law and tends to undercut Congress' use of the "clear and convincing" standard to "emphasize the requirement that there be an evidentiary basis for the facts that lead the judicial officer to conclude that pretrial detention is necessary." S.Rep. No. 225 at 22, U.S.Code Cong. & Admin.News 1984, p. 25. The Court is also persuaded by the fact that the provisions regarding the release of persons pending sentencing or appeal clearly require the defendant to bear the burden of proving that he will not flee or pose a danger to the community. 18 U.S.C. § 3143. The Judiciary Committee justified this requirement by noting that "[o]nce guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of a sentence or appeal." S.Rep. No. 225 at 26, U.S.Code Cong. & Admin.News 1984, p. 29. This rationale strongly suggests that Congress only felt comfortable shifting the burden of proof where the defendant has

---

1. The operative language of the Bail Act provides that "[s]ubject to rebuttal by the person, it shall be presumed" that no satisfactory release conditions are available where there is probable cause to believe the person committed a serious drug offense. 18 U.S.C. § 3142(e). The legislative history of the Bail Act does not clarify the evidentiary impact of the presumption regarding drug offenders. There is a brief reference to the force of a second rebuttable presumption involving persons charged with seriously dangerous offenses who have committed crimes in the past while on pretrial release, but the statement is ambiguous: "The Committee believes that it is appropriate in such circumstances that the burden shift to the defendant *to establish a*

*basis for concluding* that there are conditions of release sufficient to assure that he will not again engage in dangerous criminal activity pending his trial." S.Rep. No. 225 at 19, U.S.Code Cong. & Admin.News 1984, p. 22. (Emphasis added.)

2. The Judiciary Committee felt, in the case of a serious drug offender, that "a strong probability arises that no form of conditional release will be adequate." S.Rep. No. 225 at 19; S.Rep. No. 147 at 45. In another part of its report, the Committee seems to assume that the probable effect of the presumption will be to order drug offenders detained without bond. S.Rep. No. 147 at 50, n. 146.

been convicted of a crime and his guilt established beyond a reasonable doubt. It would be inconsistent to infer that Congress had a similar intent with respect to a defendant being held on probable cause.

■ The Court therefore concludes that the rebuttable presumption in the Bail Act is intended only to shift the burden of production. This interpretation is consistent with the rule in federal courts that a presumption shifts only the burden of coming forward with evidence unless Congress otherwise provides. Fed.R.Evid. 301. Because the presumption does not affect the government's obligation to prove that detention is necessary, the defendant's argument that this provision of the Bail Act is unconstitutional under *Hunt v. Roth* would require the Court to hold that it is unreasonable and arbitrary merely to impose a burden on the defendant to come forward with some evidence tending to support his application for pretrial release. Even a broad reading of the opinion in *Hunt v. Roth* does not support such a conclusion. Particularly where the presumption has a rational basis in fact, which the defendant here does not dispute, this Court has no difficulty concluding that the Eighth Amendment does not prohibit Congress from imposing a burden of production on a specified class of defendants.

## III.  DUE PROCESS

The defendant contends that the pretrial detention provisions of the Bail Act violate his Fifth Amendment due process rights. His arguments are (1) that pretrial detention is punishment and cannot be imposed without an adjudication of guilt; (2) that he is entitled to a presumption of innocence and that the detention hearing must provide, at a minimum, the rights of confrontation, cross-examination, and compulsory process; and (3) that the statutory presumption applicable to drug offenders unconstitutionally shifts the burden of proof to the defendant to show that he is entitled to release.

### A.  Detention as Punishment

■ "[U]nder the Due Process clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Therefore, if pretrial detention under the Bail Act is punishment, it may only be imposed after a criminal trial containing the full procedural safeguards of the Fifth and Sixth Amendments. The defendant argues that because pretrial detention involves incarceration and the loss of virtually all personal liberty, it must inevitably constitute punishment. This claim is far too sweeping to have any persuasive effect. As the Supreme Court explained long ago: "Detention is a usual feature of every case of arrest on a criminal charge, even when an innocent person is wrongfully accused, but it is not imprisonment in the legal sense." *Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896).

In *Schall v. Martin,* the United States Supreme Court upheld a New York statute which authorized the pretrial detention of an accused juvenile if the judge finds a "serious risk" that the juvenile "may before the return date commit an act which if committed by an adult would constitute a crime." 104 S.Ct. at 2405 (quoting N.Y. Family Court Act § 320.5(3)(b)). After concluding that the statute served the "legitimate and compelling" governmental purpose of protecting the community from crime, *Id.* at 2410, the Supreme Court considered whether the statute was penal or regulatory in nature. The Court stated its analysis as follows:

Even given, therefore, that pretrial detention may serve legitimate regulatory purposes, it is still necessary to determine whether the terms and conditions of confinement under (the statute) are in fact compatible with those purposes. "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Absent a showing of an express intent to

punish on the part of the State, that determination will generally turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." (Citations omitted.)

*Id.* at 2412–13.

Although slightly abbreviated, this is the same test which the District of Columbia Court of Appeals applied in *United States v. Edwards,* 430 A.2d at 1332. In both cases, the courts determined that preventive detention under the respective statutory schemes was regulatory rather than penal. Drawing guidance from the reasoning of those cases, this Court concludes that pretrial detention under the new federal Bail Act does not constitute punishment.

The defendant does not suggest and there is no indication in the statute itself that Congress intended to punish persons detained under the Bail Act. On the contrary, the principal objective of the Bail Act is to reduce the amount of crime being committed by persons on pretrial release. *Edwards* recognized that the use of pretrial incarceration to prevent reasonably predictable criminal conduct is not punitive in nature. 430 A.2d 1332. Such a measure is preventive and forward-looking; it does not seek to promote any of the purposes ordinarily associated with punishment: retribution, rehabilitation, or deterrence. *Id.* at 1333.

The nonpunitive purpose of the statute is further illustrated by the fact that detention is only to be used where the imposition of stringent release conditions cannot assure the safety of the community or the appearance of the defendant at trial. 18 U.S.C. § 3142(e). An important concern of Congress in enacting the new bail legislation was the widespread belief that high money bail was being used arbitrarily to detain certain defendants without any limitations or safeguards. *See* S.Rep. No. 225 at 9. The new legislation is carefully designed to avoid detention where it is not shown to be necessary. Moreover, even where detention is ordered, the Bail Act provides that detainees must be confined separately, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. 18 U.S.C. § 3142(i)(2). It is also significant that the period of pretrial detention is limited by the constraints of the Speedy Trial Act, which require the trial of an accused person to commence within 70 days after the filing of the indictment. 18 U.S.C. § 3161(c)(1). Based on these considerations, the Court concludes that pretrial detention under the new Bail Act is regulatory rather than punitive.

**B. Procedural Due Process**

The defendant next argues that even if pretrial detention is not found to be a penal sanction, it nevertheless constitutes a significant deprivation of liberty that must be preceded by a fair hearing satisfying the standards of procedural due process. The defendant claims that due process in this context means the government must prove each required finding beyond a reasonable doubt. He also asserts that the pretrial detention hearing must include rights of confrontation, cross-examination, and compulsory process.

The fact that a liberty interest is implicated to which due process applies does not indicate the scope of the safeguards to be afforded. It is well-established that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A determination of whether the procedures provided for are constitutionally sufficient requires an analysis of the private interest affected by official action, the governmental function involved, and the probable value of any additional procedural safeguards. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975).

The defendant's argument that he is entitled to a presumption of innocence and may not be confined on anything less than

a reasonable doubt standard is without merit. The Supreme Court has specifically held that the presumption of innocence, which describes the burden of proof in criminal trials, has "no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Bell v. Wolfish,* 441 U.S. at 533, 99 S.Ct. at 1870.

Although proof beyond a reasonable doubt is not dictated by the requirements of procedural due process at this stage of the defendant's criminal proceedings, the issue of how much proof is necessary at a pretrial detention hearing is not clearly settled. The District of Columbia pretrial detention statute, which requires a judicial officer to find "a substantial probability" that the accused committed the offense for which he is charged, was upheld by the District of Columbia Court of Appeals in *Edwards,* but the court strongly suggests that a finding of probable cause would have provided adequate due process protection. 430 A.2d at 1339. In reaching this decision, the *Edwards* court relied upon a line of Supreme Court cases establishing the proposition that a finding of probable cause is sufficient to impose significant restraints on liberty. *See Morrissey v. Brewer,* 408 U.S. at 485–89, 92 S.Ct. at 2602–04 (parole violations); *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 789, 93 S.Ct. 1756, 1759, 1763, 36 L.Ed.2d 656 (1973) (probation violation); *Gerstein v. Pugh,* 420 U.S. 103, 119–21, 95 S.Ct. 854, 865–66, 43 L.Ed.2d 54 (1975) (detention after arrest on criminal violation). In particular, *Edwards* drew support from the Supreme Court's decision in *Gerstein v. Pugh,* in which the Court held that a determination of probable cause must be provided "as a prerequisite to an extended restraint of liberty following arrest." 420 U.S. at 114, 95 S.Ct. at 863.

█ This Court agrees that probable cause provides sufficient proof on the issue of whether the defendant committed the offense with which he is charged in order to detain the defendant pending trial. Apart from this probable cause determina-

tion, however, there remains the question of how much process is required at the hearing to establish the statutory requirements for pretrial detention. *Edwards* looked to *Gerstein* for guidance on this issue as well, concluding that the liberty interest affected in a probable cause determination is indistinguishable from the defendant's interest in a pretrial detention hearing. 430 A.2d at 1336. The Supreme Court ruled in *Gerstein* that a probable cause hearing does not require "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process." 420 U.S. at 119, 95 S.Ct. at 865. The opinion did not define the minimum procedural protections necessary at a probable cause hearing, but encouraged the "flexibility and experimentation" of the states in devising adequate procedures. *Id.* at 123, 95 S.Ct. at 867. Based on this holding, *Edwards* concluded that information may be presented at a pretrial detention hearing by hearsay or proffer, that the defendant does not have the right to confront or cross-examine witnesses unless they appear at the hearing, and that the defendant may subpoena an adverse witness only after a showing that the expected testimony may negate the defendant's involvement in the charged offense. 430 A.2d 1337–39.

█ Relying on *Edwards,* Congress did not provide full adversarial safeguards in the Bail Act. S.Rep. No. 225 at 22. This Court agrees that such protections are not constitutionally required and that the procedures specified in the Bail Act for a pretrial detention hearing are adequate to protect against erroneous and unnecessary deprivations of liberty. The applicability of *Gerstein* to a due process analysis of pretrial detention is supported by the Supreme Court's recent decision in *Schall v. Martin,* which approved the use of informal procedures in this context. 104 S.Ct. at 2417. Moreover, it is important to recognize that the procedural protections in the Bail Act are still quite significant. In order to detain an accused person, the judicial officer must make a determination after a hearing

that no conditions of release will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). The statute provides for representation by counsel, the right to testify, to present witnesses, to cross-examine, and to present information by proffer or otherwise. 18 U.S.C. § 3142(f). The Bail Act requires that a finding of dangerousness be supported by clear and convincing evidence. *Id.* Although the statute does not specify the amount of proof necessary with regard to the risk of flight, this Court construes the statute to require proof by a preponderance of the evidence. This is the standard usually applied in pretrial proceedings. *See, e.g., Lego v. Twomley,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (voluntariness of a confession); *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (consent to a search). If a detention order is issued, the judicial officer must include written findings of fact and a written statement of the reasons for the order. 18 U.S.C. § 3142(i)(1). A person detained under the Bail Act is entitled to review by the district court and may then appeal the order. 18 U.S.C. § 3145.

## C. The Impact of the Presumption

As with his Eighth Amendment argument, the defendant objects most strenuously to the rebuttable presumption in favor of detention triggered under the statute by a probable cause finding that the accused committed a serious drug offense. 18 U.S.C. § 3142(e). The defendant complains that this provision shifts the burden of proof to the accused and unfairly slants the proceeding towards the government. As noted above, the presumption shifts only the burden of production, not the burden of persuasion. The judicial officer is free to consider any information that may tend to favor the defendant's release. The presumption is only effective where there

is not enough evidence for a reasonable fact finder to conclude that the contrary of the presumed fact is true. The impact of the presumption is therefore rather limited and it is certainly not so great as to render the detention hearing fundamentally unfair.[3]

## IV. APPLICATION OF THE STATUTE

Having rejected the defendant's arguments that the Act is unconstitutional, the Court must now consider the facts presented by the parties to determine whether there are any conditions of release that will reasonably assure the defendant's appearance at trial and the safety of any other person and the community. 18 U.S.C. § 3142(e). As noted above, a federal magistrate has already ordered the detention of the defendant on the basis of his finding that no such conditions are available. With his present motion, the defendant seeks review of the magistrate's order pursuant to 18 U.S.C. section 3145(b). This provision does not describe the scope of the hearing that should be conducted on review, but after giving the parties an opportunity to brief this issue, the Court determined that a defendant seeking review of a magistrate's order is entitled to have the district court consider the transcript of the hearing before the magistrate as well as any newly developed evidence that was not presented at the prior hearing. Although there is no case law interpreting this provision of the Bail Act, the cases analyzing similar language in the former bail statute, 18 U.S.C. § 3147(a) (repealed), are in general agreement that the district court should exercise independent consideration of all the facts properly before it on a motion to amend a detention order. *U.S. v. Smith,* 87 F.R.D. 693, 699 (E.D.Cal.1980); *U.S. v. Zuccaro,* 645 F.2d 104, 106 (2d Cir.1981); *U.S. v. Thibodeaux,* 663 F.2d 520, 522 (5th Cir.1981); *U.S. v. Birges,* 523 F.Supp. 472, 475 (D.Nev.1981). The Court therefore

---

**3.** Because the Court construes the effect of the presumption to shift only the burden of production, the Court is not called upon to reach the issue of whether shifting the burden of proof on

the statutorily required findings of dangerousness and flight risk would violate the defendant's constitutional rights under the Fifth Amendment.

renders its decision below on the basis of a detailed review of all the information presented to the magistrate as well as several new affidavits offered by the defendant at the revocation hearing.

■ Analyzing the evidence in turn according to the statutory scheme, the Court finds probable cause to believe that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act" (manufacturing methamphetamine in violation of 21 U.S.C. section 841(a)(1)). 18 U.S.C. § 3142(e). The evidence offered at the magistrate's hearing, which included testimony from two DEA agents, an affidavit in support of the complaint by Laura M. Hayes, and an affidavit in support of a search warrant by Steven P. Wood, indicated the following: (1) that federal agents found the defendant sleeping next to the components of a sophisticated methamphetamine laboratory during the search of a house in Clearlake, California, to which the defendant clearly had access; (2) that various chemicals, glassware, and equipment necessary to manufacture methamphetamine were found in the search of two storage lockers rented and used by the defendant and his brother; (3) that detectives from the Lake County Sheriff's Office had investigated the Clearlake residence in the past because of complaints of chemical odors emanating from the house; and (4) that prior to the search of the Clearlake residence, federal agents received reliable reports from a confidential informant to the effect that the defendant was involved in the clandestine manufacture and distribution of methamphetamine.

■ The finding of probable cause triggers the rebuttable presumption that there are no conditions of release sufficient to ensure the defendant's further appearances or to protect the community. 18 U.S.C. § 3142(e). The defendant satisfied his burden of production by presenting enough evidence to rebut this presumption. With respect to the risk of flight, the defendant made a proffer regarding his record of

appearance in two relatively recent and serious criminal actions. In 1980, the defendant was convicted and sentenced to seven years imprisonment for selling cocaine. He remained in the district and complied with his bail requirements for almost three years, during which time the case was appealed and eventually dismissed. The defendant has also made his required appearances in a pending action for rape in the Superior Court in Napa County. The defendant's ties to the community include a house in Oakland and a fifteen year old son who lives with the defendant and his girlfriend. The defendant's parents reside in Hayward. His mother, Mariana Freitas, has offered to have her son live with her and to act as his custodian in order to satisfy the Court that the defendant would not commit any crimes pending trial. Mrs. Freitas has also offered to post a deed of trust for the unencumbered value of her home ($120,000) as collateral for her son's bail.

■ Although the Court is satisfied that the defendant has rebutted the presumption, the Court nevertheless concludes that the defendant should be detained pending trial. In reaching this decision, the Court considers the factors set forth in 18 U.S.C. section 3142(g). The defendant is charged with a crime involving narcotics, which both the statute and its legislative history indicate should carry great weight in the court's determination on release. *See, e.g.,* 18 U.S.C. § 3142(g)(1) (equating crimes involving narcotics with crimes of violence). Moreover, expert testimony received from one of the agents at the magistrate's hearing indicates that the laboratory where the defendant was arrested was one of the most sophisticated drug labs the agent had ever seen and was capable of generating large quantities of the drug in a relatively short period of time. The weight of the evidence against the accused is substantial. 18 U.S.C. § 3142(g)(2). In addition to the information referred to in the probable cause discussion above, the government has other evidence which tends to indicate that the defendant is involved in

criminal activity. Although the defendant has no full-time job, he apparently owns a great deal of valuable personal property, including several expensive automobiles, a motor boat, jewelry, and more than $50,000 in cash. The agents who searched his home in Oakland also discovered six loaded weapons, including an Uzi semi-automatic rifle.

The history and characteristics of the defendant also tend to support detention. 18 U.S.C. § 3142(g)(3). Although the defendant has strong family ties in the area and has resided here for a long period of time, he is not a citizen of the United States. The defendant is a native of Portugal and a permanent resident alien of the United States. He is not married, nor does he hold a full-time job. The defendant has a good record of appearance at court proceedings, but the charges pending against him here are very serious. Each of the two offenses carries a maximum penalty of fifteen years in prison and the charges are supported by strong evidence. The danger posed to the community by the defendant's release is real and substantial. 18 U.S.C. § 3142(g)(4). The nature and sophistication of the laboratory, the fact that the defendant has substantial resources even though he has no regular occupation, and the presence of the weapons at his residence indicate that the defendant is deeply involved in illegal drug activity, something which Congress clearly wished to include as a source of danger to the community. S.Rep. No. 225 at 13. The probation report shows that the defendant has a lengthy criminal history, and even more important, the offense with which the defendant is charged here is alleged to have occurred while he was on pretrial release from the rape charge in Napa County, a factor given special weight under the Bail Act. 18 U.S.C. § 3142(g)(3)(B).

In light of this evidence, none of the release conditions suggested by the defendant provide sufficient assurance that the defendant will cease all illegal activity and appear as required. The defendant's mother would not be an effective custodian. Mrs. Freitas is 63 years old and she concedes that her time is completely consumed with caring for the defendant's invalid father. Therefore, the Court finds, on the basis of all the information before it, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." The finding of dangerousness is supported by clear and convincing evidence, as detailed above. The issue of flight risk is a somewhat closer question, but the Court finds by a preponderance of the evidence that the defendant must be detained on this ground as well. The defendant is ordered committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentence or being held in custody pending appeal.

IT IS SO ORDERED.