UNITED STATES of America

v.

Chyrea "Tippy" CAMPBELL.

Civ. A. No. M–85–0480.

United States District Court,
D. Maryland.

Nov. 5, 1985.

Catherine C. Blake, U.S. Atty., for the District of Maryland, Charles P. Scheeler, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Michael J. Morrissey, Vienna, Va., for defendant Campbell.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

Defendant Campbell has argued, in support of his Motion for Review of the Magistrate's detention order, the unconstitutionality of the Bail Reform Act of 1984. Briefs were filed by both sides and argument held in open court on November 1, 1985 on this issue. As announced after argument in open court at that time, the Court disagrees with the defendant's position. The following is a brief additional explanation of the Court's rationale.

The defendant argues that the rebuttable presumption in 18 U.S.C. § 3142(e), against release of an individual charged with an offense for which a maximum imprisonment of 10 years or more is prescribed in the Controlled Substances Act, is unconstitutional because it:

(1) violates the Eighth Amendment's proscription against excessive bail;

(2) violates the defendant's due process rights; and

(3) violates the Equal Protection Clause.

As the government points out, these same arguments have been previously rejected by other federal courts. *United States v. Jessup,* 757 F.2d 378 (1st Cir. 1985); *United States v. Freitas,* 602 F.Supp. 1283 (N.D.Cal.1985); *United States v. Acevedo-Ramos,* 600 F.Supp. 501 (D.P.R.1984), *aff'd,* 755 F.2d 203 (1st Cir. 1985); *United States v. Hazzard,* 598 F.Supp. 1442 (N.D.Ill.1984); *United States v. Aiello,* 598 F.Supp. 740 (S.D.N.Y.1984).

As to his Eighth Amendment claim, defendant apparently relies upon the language in *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), to argue that defendant has a constitutional right to bail. The Court stated:

"From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See *Hudson v. Parker,* 156 U.S. 277, 285 [15 S.Ct. 450, 453, 39 L.Ed. 424] (1895). Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."

342 U.S. at 4, 72 S.Ct. at 3 (emphasis in original). While this language tends to support an argument that there is a right to bail before trial, the defendants in *Stack* were afforded bail, but they argued that the bail fixed was excessive. As the government points out, in *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), decided by the Supreme Court later in the same term, the Court rejected a claim by detained alien Communists that they had a right to bail under the Eighth Amendment while awaiting hearings on deportation. The Court found:

"The bail clause [of the Eighth Amendment] was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, *the very language of the Amendment fails to say all arrests must be bailable.* We think, clearly, here that the Eighth Amendment does

not require that bail be allowed under the circumstances of these cases."

342 U.S. at 545–46, 72 S.Ct. at 536–37 (emphasis added) (footnotes omitted).

Other cases, such as *United States v. Edwards*, 430 A.2d 1321 (D.C.Ct.App.1981) (*en banc*), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), and *United States ex. rel. Covington v. Coparo*, 297 F.Supp. 203 (S.D.N.Y.1969), cases cited by the government, have analyzed the issue in light of these two cases and held that there is no absolute right to bail under the Eighth Amendment. The courts rejecting the constitutional attacks on the Bail Reform Act of 1984 have relied on these cases in rejecting such attacks. *See United States v. Freitas*, 602 F.Supp. at 1287; *United States v. Acevedo-Ramos*, 600 F.Supp. at 506–07; *United States v. Hazzard*, 598 F.Supp. at 1448–49.

Additionally, these cases have compared the provision in the Bail Reform Act of 1984 to that in *Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984), in which the Supreme Court upheld a New York statute which authorized pretrial detention of an accused juvenile if the judge found a serious risk that the juvenile might commit another crime before his return date. To the extent that defendant asserts that dangerousness to the community is not a proper consideration for pretrial determination, such an argument must fail under *Schall*. As the court in *Freitas* stated:

"Although the concept of permitting an assessment of the defendant's dangerousness represents a significant change in federal bail law, this Court is satisfied that Congress' determination of the need to protect the community represents a sufficient compelling reason to detain an accused prior to trial. The Supreme Court has not confronted this precise issue, but a recent due process case upholding the pretrial detention of juveniles on the basis of dangerousness strongly suggests that the Eighth Amendment does not foreclose a court from considering this factor in denying bail to adults.

*Schall v. Martin*, [467] U.S. [253], 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). *See also United States v. Hazzard*, 598 F.Supp. 1442 (N.D.Ill.1984). In *Schall*, the Supreme Court emphasized 'the legitimate and compelling state interest in protecting the community from crime' and it specifically rejected the argument that future criminal conduct cannot be predicted with sufficient accuracy to meet the objectives of a preventive detention statute. 104 S.Ct. at 2410, 2417–18. Accordingly, this Court concludes that the Eighth Amendment does not forbid pretrial detention based on dangerousness."

602 F.Supp. at 1287–88.

The argument that the presumption violates the Due Process Clause is also without merit. Plaintiff's citation of *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), is misplaced. That case concerned a presumption, that a possessor of marihuana knew that it was imported illegally, which was used to convict the defendant of the substantive offense.

As the First Circuit stated in *Jessup:* "the *Leary* Court applied this standard to a presumption in the context of a full blown criminal trial, where the presumption was used to establish an important element of the crime that was charged. Here, on the other hand, we deal with a presumption that is applied to a preliminary hearing, where decisions must be made quickly and where the purpose is not to punish but to increase the likelihood that the trial will go forward. It is well established that the constitutional guarantees at such hearings are less protective of defendants than at trial. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 111–14, 95 S.Ct. 854, 861–63, 43 L.Ed.2d 54 (1975); *United States v. Edwards*, 430 A.2d 1321, 1333–37 (D.C.App.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). And, what is more to the point, the evidentiary burdens imposed upon the government are also less severe. *Cf. Gerstein v. Pugh*, 420 U.S. at 121, 95 S.Ct. at 866 (approving 'infor-

mal modes of proof' in probable cause hearings). The Constitution does not require as great a degree of certainty for charging or for securing the presence at trial of one charged as for convicting that person at a criminal trial. In this context then, the substantial basis of information underlying 'drug offender/flight' conclusions is sufficient to meet the Constitution's requirement of adequate support for a presumption. We reject Jessup's claim that more support is necessary."

757 F.2d at 386–87.

Defendant also asserts that his detention violates his due process rights, citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). To the extent that such argument is intended to assert that pretrial detention infringes upon defendant's presumption of innocence, such an argument lacks merit.

"The Supreme Court has specifically held that the presumption of innocence, which describes the burden of proof in criminal trials, has 'no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.' *Bell v. Wolfish*, 441 U.S. at 533, 99 S.Ct. at 1870."

*Freitas*, 602 F.Supp. at 1292.

Defendant may also be asserting, as have others before, that pretrial detention is punishment which is being imposed "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. at 535, 99 S.Ct. at 1872. To the extent that this is defendant's argument, it also lacks merit. As the court in *Hazzard* found, "[p]retrial detention does not punish past conduct but rather protects the community from reasonably predictable future conduct.... As in *Schall* there is no justification for the conclusion that the statute is a punitive rather than a regulatory measure." 598 F.Supp. at 1451. *See also Acevedo-Ramos*, 600 F.Supp. at 505; *Edwards*, 430 A.2d at 1331–32; *Blunt v. United States*, 322 A.2d 579, 584 (D.C.Ct. App.1974).

Finally, defendant asserts that the statute violates the Equal Protection Clause. Initially, he asserts, apparently, that no rational basis in fact exists for the law. The *Jessup* court, however, found that "the drug offender/flight presumption seems a reasonable response to this general problem [of drug offenders posing a special risk of flight], requiring that a charged drug offender produce some evidence that he does not present a special risk." 757 F.2d at 385–86.

As the legislative history of the Bail Reform Act of 1984 makes clear, the commission of crimes by defendants while on pretrial release, thereby creating a risk of danger to the community, was of particular concern to Congress.

"This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release. In a recent study of release practices in eight jurisdictions, approximately one out of every six defendants in the sample studied were rearrested more than once, and some were rearrested as many as four times.... The disturbing rate of recidivism among released defendants requires the law to recognize that the danger a defendant may pose to others should receive at least as much consideration in the pretrial release determination as the likelihood that he will not appear for trial."

S.Rep. No. 225, 98th Cong., 2d Session 6 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News, pp. 3182, 3188–89 (footnotes omitted). In defining "dangerousness," the Senate Report noted that "[t]he Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence," and emphasized that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S.Rep. No. 225, 98th Cong., 2d

Session 12–13, 1984 U.S.Code Cong. & Admin.News, pp. 3195–96.

In explaining its rationale for the rebuttable presumption arising under § 3142(e), the report stated:

"The drug offenses [under which the presumption arises] involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences. Even the prospect of forfeiture of bond in the hundreds of thousands of dollars has proven to be ineffective in assuring the appearance of major drug traffickers. In view of these factors, the Committee has provided in section 3142(e) that in a case in which there is probable cause to believe that the person has committed a grave drug offense, a rebutable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community."

S.Rep. No. 225, 98th Cong., 2d Session 20, 1984 U.S.Code Cong. & Admin.News, p. 3203 (footnotes omitted). The report spe-cifically rejected the possibility that a defendant should be released simply because substantial community ties exist, stating:

"The Committee also notes, with respect to the factor of community ties, that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community. While the Committee considered deleting the factor altogether, it has decided to retain it at this time. However, the Committee wishes to make it clear that it does not intend that a court conclude there is no risk of flight on the basis of community ties alone; instead, a court is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community."

S.Rep. No. 225, 98th Cong., 2d Session 24–25, 1984 U.S.Code Cong. & Admin.News, pp. 3207–08 (footnote omitted).

Considering the legislative history of the Act, in view of Congress' legitimate interest in protecting society, the Court concurs with the finding of the *Jessup* court that Congress' conclusions regarding certain drug offenders' posing a danger to the community and a risk of flight are not without substantial basis in fact, and that Congress' solution, in the form of the rebuttable presumption set forth in § 3142(e), is reasonable. *See United States v. Jessup,* 757 F.2d at 386.

Similarly, defendant asserts that pretrial detention "is not the least intrusive method available to Congress to assure the presence of a defendant at trial." Following *Schall,* however, it appears clear that pretrial detention may be based on the defendant's being a danger to the community.

Defendant also cites *Hunt v. Roth,* 648 F.2d 1148 (8th Cir.1981), *vacated as moot sub. nom., Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982), for the proposition that it is unconstitutional to carve out certain offenses for different treatment in determining whether to grant

**992**

or deny bail. In *Hunt,* however, the Eighth Circuit held unconstitutional a Nebraska statute which denied bail to all persons charged with certain sex offenses. The statute was held unconstitutional because it created an irrebuttable presumption, and the court expressly refused to decide that there was a right in every case to release on bail.

"We do not hold and need not decide that there is a constitutional right in every case to release on bail. As we have discussed, there exists a strong argument that bail may be properly denied without encroaching on constitutional concerns where a judicial officer weighs all the appropriate factors and makes a reasoned judgment that the defendant's past record demonstrates that bail will not reasonably assure his or her appearance or, arguendo, that he or she, because of the overall record and circumstances, poses a threat to the community. The fatal flaw in the Nebraska constitutional amendment is that the state has created an irrebuttable presumption that every individual charged with this particular offense is incapable of assuring his appearance by conditioning it upon reasonable bail or is too dangerous to be granted release."

648 F.2d at 1164 (footnote omitted).

The reasoning used by the *Hunt* court is not applicable to this case, since the statute here in issue sets up a presumption which can be rebutted by the defendant.

For these and other reasons stated in open court, the Court has concluded that defendant's challenge to the provision of the Bail Reform Act of 1984, creating a rebuttable presumption for defendants indicted for crimes such as that in the present case, is without merit. The Magistrate's determination that the defendant should be detained is affirmed.

It has been SO ORDERED.

The Clerk shall mail a copy of this Memorandum to counsel for the parties.